# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **AUSTIN ERICKSON**, <br> c/o Cornerstone Law Firm <br> 8350 N. St. Clair Ave, #225 <br> Kansas City, MO 64151 <br><br> Plaintiff, <br><br> v. <br><br> **HAZ-MAT RESPONSE, INC.**, <br> *Registered Agent:* <br> John W Stockdale <br> 1203 S. Parker <br> Olathe, KS 66061 <br><br> Defendant. | Case No. _____ <br><br><br> **REQUEST FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Austin Erickson, by and through his attorney, and for his cause of action against Defendant Haz-Mat Response, Inc., states and alleges as follows:

## Parties and Jurisdiction

1. This is an employment case based upon the Americans with Disabilities Act as Amended, 42 U.S.C. §§ 12101 *et seq.* ("ADAAA") and Kansas common law.

2. Plaintiff Austin Erickson (hereinafter, "Plaintiff") is a citizen of United States and of Missouri, currently domiciled in Archie, Missouri.

3. Defendant Haz-Mat Response, Inc. (hereinafter "Haz-Mat") is and was at all relevant times a corporation organized under the laws of Kansas with its principal place of business at 1203 South Parker St., Olathe, Kansas 66061.

4. Haz-Mat conducts substantial and continuous business in the state of Kansas.

5. At all relevant times, Haz-Mat employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding year.

6. At all relevant times, Haz-Mat engaged in interstate commerce.

7. Haz-Mat is an employer within the meaning of the ADAAA.

8. Jurisdiction is proper in the District of Kansas pursuant to 28 U.S.C. § 1331, as some or all of Plaintiff's claims arise under the laws of the United States.

9. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367 because the state law claim is part of the same case or controversy as the claims that arise under federal law.

10. Venue is proper in the District of Kansas pursuant to 28 U.S.C. § 1391 because a substantial portion of the alleged discriminatory conduct occurred in this District.

## Administrative Procedures

11. On or about April 5, 2019, Plaintiff timely filed with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC") a Charge of Discrimination against Defendant alleging discrimination based on disability and retaliation (attached as Exhibit 1 and incorporated herein by reference).

12. On June 19, 2019, the EEOC issued to Plaintiff a Notice of Right to Sue (attached as Exhibit 2 and incorporated herein by reference).

13. The aforesaid Charge of Discrimination provided the KHRC and the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of a

KHRC or EEOC investigation, which could reasonably be expected to have grown out of the Charge of Discrimination.

14. This lawsuit is filed within ninety (90) days of the issuance of the EEOC's Notice of Right to Sue.

15. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

16. This action is filed within the applicable statutes of limitations.

### Additional Factual Allegations

17. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

18. Plaintiff began working for Haz-Mat in approximately April 2017 as a shop technician.

19. During Plaintiff's employment, certain departments at Haz-Mat, including the "tank crews," were dispatched out into the region.

20. Between April 2017 and March 2018, Haz-Mat would send Plaintiff to work with one of these crews on very rare and sporadic occasions.

21. Plaintiff's primary job duties between April 2017 and March 2018 were to remain in the mechanic shop and repair trucks.

22. In early 2018, one of Plaintiff's coworkers kicked the back of Plaintiff's knee to make it buckle, rupturing Plaintiff's ACL and meniscus.

23. Plaintiff experienced immediate and intense pain in his knee.

24. Plaintiff attempted to continue working for a few weeks following the incident despite his pain.

25. Plaintiff underwent knee surgery in May 2018.

26. Approximately two months after undergoing knee surgery, Plaintiff's doctor cleared him to return to work with light duty restrictions.

27. While Plaintiff was returned to work with light duty restrictions, Haz-Mat assigned Plaintiff administrative work that could be performed either in the main office or from home.

28. In approximately mid-December 2018, Plaintiff was released to work full duty without restrictions.

29. Upon Plaintiff's return to work without restrictions in approximately mid-December 2018, Defendant told Plaintiff that a few days later, he had to go out on an out-of-town crew assignment over the weekend.

30. Upon being told that a few days later, he was going to have to go out on an out-of-town crew assignment over the weekend, Plaintiff informed Defendant that he had a family-related conflict that had been scheduled for more than three months.

31. Defendant Haz-Mat told Plaintiff to take the rest of the week off, but that the following week, he would be out on another out-of-town crew assignment and would not be returning to his position in the repair shop.

32. Plaintiff attended the out-of-town crew assignment as instructed.

33. Immediately after Plaintiff attended the out-of-town crew assignment to which he had been assigned in December 2018, Defendant's employees were given time off for the holidays.

34. Upon returning from holiday leave on or around December 26, 2018, Plaintiff attended training as mandated by Defendant.

35. After Plaintiff completed his training on or around December 26, 2018, Defendant terminated his employment.

36. Plaintiff was told that he was being terminated due to a "lack of will to work."

## COUNT I
### Violation under 42 U.S.C. §§ 12101 *et seq*.
### Disability Discrimination - Termination

37. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

38. At all times relevant, Plaintiff was a member of a protected class pursuant to the ADAAA because he had a physical impairment that substantially limited one or more of his major life activities, had a record of such impairment, and/or was regarded by Defendant Haz-Mat as having a physical impairment, to wit, a ruptured ACL and meniscus.

39. At all times relevant, Plaintiff's ruptured ACL and meniscus substantially limited one or more of his daily life activities including but not limited to the ability to lift, bend, work, and engage in physical labor.

40. At all times relevant, Plaintiff could perform the essential functions of his job with or without reasonable accommodation.

41. In terminating Plaintiff's employment, Defendant Haz-Mat subjected Plaintiff to an adverse employment action.

42. Plaintiff's disability was a motivating factor in Defendant Haz-Mat's decision to terminate his employment.

43. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant Haz-Mat, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Haz-Mat, thus making Haz-Mat liable for said actions under the doctrine of *respondeat superior*.

44. Haz-Mat failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

45. Haz-Mat failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the ADAAA.

46. As shown by the foregoing, as a result of his termination, Plaintiff suffered intentional discrimination at the hands of the Haz-Mat in violation of the ADAAA.

47. As a direct and proximate result of Haz-Mat actions and/or omissions, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

48. As a further direct and proximate result of Haz-Mat actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

49. Haz-Mat conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Haz-Mat or to deter Haz-Mat and other entities from like conduct in the future.

50. Pursuant to the provisions of the ADAAA, Plaintiff is entitled to recover reasonable attorneys' fees from Haz-Mat.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Haz-Mat for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT II
### Violation under 42 U.S.C. §§ 12101 *et seq*.
### Retaliation

51. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

52. At all times relevant, Plaintiff was a member of a protected class pursuant to the ADAAA because he had a physical impairment that substantially limited one or more of his major life activities, had a record of such impairment, and/or was regarded by Defendant Haz-Mat as having a physical impairment, to wit, a ruptured ACL and meniscus.

53. At all times relevant, Plaintiff's ruptured ACL and meniscus substantially limited one or more of his daily life activities including but not limited to the ability to lift, bend, work, and engage in physical labor.

54. At all times relevant, Plaintiff could perform the essential functions of his job with or without reasonable accommodation.

55. Plaintiff engaged in a protected activity under the ADAAA by requesting reasonable accommodation for his performing light duty tasks while recovering from surgery to repair his ruptured ACL and meniscus.

56. Plaintiff's request for reasonable accommodation was a determining factor in Haz-Mat's decision to terminate his employment.

57. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees Haz-Mat, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Haz-Mat, thus making Haz-Mat liable for said actions under the doctrine of *respondeat superior*.

58. Haz-Mat failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

59. Haz-Mat failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the ADAAA.

60. As shown by the foregoing, as a result of his termination, Plaintiff suffered intentional discrimination at the hands of the Haz-Mat in violation of the ADAAA.

61. As a direct and proximate result of Haz-Mat actions and/or omissions, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

62. As a further direct and proximate result of Haz-Mat actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

63. Haz-Mat conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Haz-Mat or to deter Haz-Mat and other entities from like conduct in the future.

64. Pursuant to the provisions of the ADAAA, Plaintiff is entitled to recover reasonable attorneys' fees from Haz-Mat.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Haz-Mat for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT III
### Violation of Kansas Public Policy
### Retaliation

65. Plaintiff realleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

66. The state of Kansas has expressed a well-established and clear mandate of public policy that encourages employees to file workers' compensation claims for injuries by accident, arising out of and in the course of the employee's employment. *See* K.S.A. §§ 44-501 *et seq.*

67. The state of Kansas has also expressed a well-established and clear mandate of public policy that discourages an employer or agent of the employer from discharging or discriminating against any employee for exercising his or her rights under the workers' compensation law. *See* K.S.A. § 44-501.

68. Plaintiff reported his injury and exercised his rights under the Kansas worker's compensation law.

69. Defendant Haz-Mat knew or anticipated that Plaintiff did or would file a workers' compensation claim before it terminated his employment.

70. By terminating Plaintiff's employment, Defendant Haz-Mat subjected Plaintiff to an adverse employment action.

71. Plaintiff's exercise of his workers' compensation rights, as encouraged by public policy, was a determining factor in Defendant Haz-Mat's decision to terminate Plaintiff's employment.

72. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant Haz-Mat, and were at all such times acting

within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendant Haz-Mat, thus making Defendant Haz-Mat liable for said actions under the doctrine of *respondeat superior*.

73. Defendant Haz-Mat failed to make good faith efforts to establish and enforce policies to prevent wrongful termination of its employees' employment, including termination in retaliation for exercising one's workers' compensation rights.

74. Defendant Haz-Mat failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Kansas' common law prohibition against wrongful termination in violation of public policy.

75. As shown by the foregoing, Plaintiff suffered intentional wrongful termination based on his protected activity.

76. As a direct and proximate result of Defendant Haz-Mat actions and/or omissions, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

77. As a further direct and proximate result of Defendant Haz-Mat actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

78. Defendant Haz-Mat's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant Haz-Mat or to deter it and other employers from like conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant Haz-Mat for economic damages, including but not limited to back-pay and lost benefits;

for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

### Demand for Jury Trial and Designation of Place of Trial

Plaintiff requests a trial by jury in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

CORNERSTONE LAW FIRM

By: /s/ Joshua P. Wunderlich
Joshua P. Wunderlich D. Kan. #78506
j.wunderlich@cornerstonefirm.com
8350 N. St. Clair Ave., Suite 225
Kansas City, Missouri 64151
Telephone        (816) 581-4040
Facsimile         (816) 741-8889

ATTORNEY FOR PLAINTIFF